IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRCT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARESS SHUMAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   18-CV-3985 |
| | ) | |
| METROPLEX, INC., RELATED MANAGEMENT, and | ) ) | |
| 2101 S. MICHIGAN LLC, | ) | **JURY DEMAND** |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' VERIFIED ANSWER TO PLAINTIFF'S COMPLAINT

NOW COME the Defendants METROPLEX, INC., RELATED MANAGEMENT and 2101 S. MICHIGAN LP (improperly named 2101 S. Michigan LLC), by and through their attorneys Margaret Firnstein and Charles Prochaska of SmithAmundsen, LLC and in response to Plaintiff's Complaint state as follows:

### JURISDICTION and VENUE

1. This court has jurisdiction over Defendants since Defendants were operating as a business and/or licensed to do business in Cook County, Illinois, at the time of the incident in question. Venue is proper since Defendants' wrongful conduct took place in Cook County, Illinois.

**Answer:      Defendants deny that Cook County, IL is the proper venue for this matter as alleged by Plaintiff. Defendants further deny any wrongful conduct on their part. Defendants admit that they are/were licensed to do business in Cook County, IL however.**

# PARTIES

2. At the time of the incident, Plaintiff, Caress Shumaker, was a tenant at 2101 S. Michigan, Chicago, Cook County, Illinois.

**Answer:** **Defendants admit the allegations in this paragraph.**

3. Defendant Metroplex, Inc. is an Illinois municipal corporation. At all relevant times, Defendant Metroplex was an "owner" of project-based Section 8 housing within the meaning of the United States Housing Act of 1937 ("Housing Act"), 42 U.S.C. §§ 1437f, and administered federally subsidized low-income housing as authorized by the Housing Act and federal implementing regulations.

**Answer:** **Defendants admit that Metroplex, Inc. is an Illinois corporation. Defendants deny the remaining allegations in this paragraph.**

4. Defendant Metroplex, Inc. is a "person" as that term is used in 42 U.S.C. § 1983 and at all relevant times has been acting under color of state law. At all relevant times, it acted by and through its duly authorized employees who acted within the scope and course of their employment and under color of state law.

**Answer:** **The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants. To the extent an answer is required, denied.**

5. Defendant 2101 S. Michigan, LLC is an Illinois municipal corporation. At all relevant times, 2101 S. Michigan, LLC was an "owner" of project-based Section 8 housing within the meaning of the United States Housing Act of 1937 ("Housing Act"), 42 U.S.C. §§ 1437f, and administered federally subsidized low-income housing as authorized by the Housing Act and federal implementing regulations.

**Answer:** **Defendants deny that 2101 S. Michigan is an Illinois municipal corporation. Defendants admit that 2101 S. Michigan LLC was the owner of certain Section 8 housing.**

6. Defendant 2101 S. Michigan, LLC is a "person" as that term is used in 42 U.S.C. § 1983 and at all relevant times has been acting under color of state law. At all relevant times, it acted by and through its duly authorized employees who acted within the scope and course of their employment and under color of state law.

**Answer:** **The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants. To the extent an answer is required, denied.**

7. Defendant Related Management is an Illinois municipal corporation. At all relevant times, Related Management was an "owner" of project-based Section 8 housing within the meaning of the United States Housing Act of 1937 ("Housing Act"), 42 U.S.C. §§ 1437f, and administered federally subsidized low-income housing as authorized by the Housing Act and federal implementing regulations.

**Answer:** **Defendants deny that Related Management is an Illinois municipal corporation. Defendants deny all other allegations in this paragraph.**

8. Defendant Related Management is a "person" as that term is used in 42 U.S.C. § 1983 and at all relevant times has been acting under color of state law. At all relevant times, it acted by and through its duly authorized employees who acted within the scope and course of their employment and under color of state law.

**Answer:** **The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants. To the extent an answer is required, denied.**

## STATEMENT OF LAW

9. The project-based Section 8 program was created by the United States Housing Act of 1937, 42 U.S.C. § 1437.

**Answer: The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants.**

10. As a public housing resident, Ms. Shumaker cannot lose her public housing without good cause. Indeed, a lease automatically renews at the end of every term unless it is not renewed for good cause. 24 CFR 966.4(a)(2)(i)-(ii); 24 CFR 966.4(1)(2).

**Answer: The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants.**

11. Title VIII of the Civil Rights Act of 1968 ("the Fair Housing Act"), 42 U.S.C. §§ 3601 et seq., as amended by the Fair Housing Amendments Act of 1988, provides that it shall be unlawful to refuse to rent or negotiate for the rental of a dwelling unit or to otherwise make unavailable or deny a dwelling unit to any person because of sex. 42 U.S.C. § 3604(a), (f). The Fair Housing Act further prohibits a housing provider from discriminating against these protected classes "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." Id. Finally, Section 3617 of the Fair Housing Act prohibits actions that coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, any right granted or protected by the Act.

**Answer: The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants.**

12. National statistics indicate that 90-95% of domestic violence victims are women and women are eight times more likely than men to be victims of domestic violence. As a result, the U.S. Department of Housing and Urban Development's ("HUD") Office of Fair Housing and Equal Opportunity ("FHEO"), the division of HUD tasked with interpreting and enforcing the Fair Housing Act, issued guidance on assessing claims by domestic violence victims of housing discrimination under the Fair Housing Act. HUD Notice FHEO 2011-02-09. The FHEO Guidance found that domestic violence victims who are denied housing, evicted, or deprived of assistance based upon the violence in their homes may have a cause of action for sex discrimination under the Fair Housing Act. Id.

**Answer: The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants. Alternatively, Defendants lack sufficient information to admit or deny the allegations in this paragraph.**

13. The Violence Against Women Act ("VAWA") provides that a project-based Section 8 tenant such as Ms. Shumaker shall not be denied assistance or have her assistance terminated on the grounds that the tenant has been a victim of domestic violence or for criminal activity directly relating to domestic violence. 34 USC § 1249I(b). VAWA defines domestic violence to include felony or misdemeanor crimes of violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner, or by any other person against any adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction. 34 USC § 2291(a)(8). Ms. Shumaker is a victim of domestic violence entitled to the protections of VAWA.

**Answer: The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants.**

14. The Fourteenth Amendment to the United States Constitution provides, in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Similarly, the Illinois Constitution provides, "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, art I, § 2.

**Answer: The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants.**

15. The Due Process Clause of the Fourteenth Amendment and the Illinois Constitution thus require notice and a hearing before the termination of a federal subsidy that provides for basic needs like shelter. See U.S. Const., amend. XIV; Ill. Const.1970, art. I, § 2.

**Answer: The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants.**

16. 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..."

**Answer: The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants.**

17. The Illinois Human Rights Act (775 ILCS §§ 5/1-102 et seq.) prohibits unlawful discrimination in real estate transactions by mandating "freedom from discrimination against any individual because of his or her ... sex,.... 775 ILCS § 5/1-102(A). An aggrieved party may commence a civil action under this subsection whether or not a charge has been filed under Section 7B-102 and without regard to the status of any such charge. 775 ILCS § 5/10-102(A)(3). Section 7B-102 of the Act establishes the procedure for filing an administrative complaint for claims of housing discrimination under Article 3 of the Act. See 775 ILCS §§ 5/7B-101 et seq. and 775 ILCS 5/3-101 et seq.

**Answer:       The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants.**

## STATEMENT OF FACTS

18. On March 9, 2016, Plaintiff was a tenant in 2101 S. Michigan, a building owned and operated by the Defendants.

**Answer:       Defendants admit that Plaintiff was a tenant in an apartment at located at 2101 S. Michigan managed by Metroplex, Inc. and owned by 2101 S. Michigan LLC. Defendants deny that Related Management owned, operated or managed the building at any time relevant to this litigation.**

19. On March 9, 2016, Plaintiff was legally residing in her apartment at 2101 S. Michigan.

**Answer:       Defendants admit the allegations in this paragraph.**

20. For some time, and prior to March 9, 2016, Defendants had a policy and practice of employing a security guard who, prior to permitting a non-tenant to visit a tenant, required that the non-tenant showed the security guard in the lobby identification and sign in.

**Answer: Defendants deny that they employed a security guard at any time. Defendants, admit, however, that there was a policy in place wherein a security guard employed by Tact 1 was required to have non-tenants show identification and sign in the lobby. Upon information and belief, Defendants deny that this practice was violated.**

21. Additionally, the security guard then, pursuant to policy and practice of the Defendants, needed to contact the tenant whom the non-tenant wished to visit and get the permission of the tenant to let the non-tenant in prior to permitting the non-tenant to enter the building past the location of the security guard.

**Answer: Defendants deny that they employed a security guard at any time. Defendants, admit, however, that there was a policy in place wherein a tenant was to grant permission to allow a non-tenant access to the residential apartments. Upon information and belief, Defendants deny that this practice was violated.**

22. On and before March 9, 2016, Plaintiff had a partner, Ronald Thomas, who was not on the lease for Plaintiff's apartment or for any other apartment at 2101 S. Michigan.

**Answer: Defendants admit that Ronald Thomas was not named on the lease for Plaintiff's apartment or any other apartment at 2101 S. Michigan. Defendants have insufficient knowledge to admit or deny the remaining allegations in this paragraph.**

23. Ronald Thomas had physically abused the Plaintiff on multiple occasions, resulting in the Plaintiff receiving needed medical treatment. Defendants and their employees were or should have been aware of this domestic abuse.

**Answer: Defendants have insufficient knowledge to admit or deny the allegations as plead in this paragraph.**

24. Plaintiff had repeatedly informed the management at 2101 S. Michigan that she didn't want Ronald Thomas to be admitted to visit her.

**Answer:** **Denied.**

25. On at least one occasion, a security guard, A. Cook, prepared a report noting that there was a domestic dispute between Plaintiff and Ronald Thomas in the lobby at 2101 S. Michigan.

**Answer:** **Defendants admit that there is a report of domestic disturbance from Plaintiff's unit.**

26. Further, on April 21, 2015, in violation of the Defendants' written Lease Addendum concerning the Violence Against Women Reauthorizing Act, the Defendants gave Plaintiff a Notice of Lease Violation due to disturbances caused when Ronald Thomas visited Plaintiff.

**Answer:** **Defendants admit that a Notice of Lease Violation was issued to Plaintiff on or about 4/21/15. The remaining allegations in this paragraph are denied**.

27. Domestic violence has long been an unfortunate facet of American life, affecting approximately 1 out of 3 women in their lifetime, and it is the genesis for the Violence Against Women Reauthorizing Act of 2013.

**Answer:** **Defendants have insufficient knowledge to admit or deny the allegations in this paragraph.**

28. On March 9, 2016, without Plaintiff's authorization, a security guard let Ronald Thomas into the building at 2101 S. Michigan to visit Plaintiff. The Defendants permitted Ronald Thomas's entry to the building to visit Plaintiff without Plaintiff's knowledge or consent. Furthermore, upon Plaintiff's complaint via phone to Defendants about their providing Ronald Thomas with unauthorized entry, Defendants did not take action to remove Ronald Thomas.

**Answer:** **Defendants deny the allegations in this paragraph.**

29. Ronald Thomas then went to Plaintiff's apartment at 2101 S. Michigan, where he began to physically abuse her. This happened due to Defendants' failure to get authorization from Plaintiff prior to admitting Ronald Thomas into the building to visit the Plaintiff.

**Answer:** **Defendants have insufficient knowledge to admit or deny the allegation that Ronald Thomas physically abused Plaintiff. Defendants deny the remaining allegations in this paragraph.**

30. During Ronald Thomas' attack on Plaintiff, Ronald Thomas fell onto an object, which caused his death.

**Answer:** **Defendants have insufficient knowledge to admit or deny the allegation in this paragraph.**

31. As a result of Defendants' failure to get authorization from Plaintiff prior to letting Ronald Thomas into the building, and through no fault of the Plaintiff's, Chicago police officers arrested Plaintiff.

**Answer:** **Defendants deny each and every allegation in this paragraph.**

32. As a result of Defendants' actions, Plaintiff was held in custody in the Cook County Jail from March 9, 2016 until the State's Attorney of Cook County dismissed all charges against her on August 16, 2017.

**Answer:** **Defendants deny each and every allegation in this paragraph.**

33. As a result of Defendants' actions, Plaintiff was forced to retain attorneys, to whom she agreed to pay $20,000.00.

**Answer:** **Defendants deny each and every allegation in this paragraph.**

34. As a result of Defendants' actions, without good cause, and in violation of the Defendant's rights under state and federal law, the Defendants sent Plaintiff a notification that they were terminating her lease on March 14, 2016.

**Answer:    Defendants deny each and every allegation in this paragraph.**

35. On April 25, 2016, without good cause, and in violation of the Defendant's rights under state and federal law, the Defendants brought a complaint against the Plaintiff for eviction. The eviction case was dismissed on July 27, 2016.

**Answer:    Defendants deny each and every allegation in this paragraph.**

36. Ms. Shumaker's tenancy has not been lawfully terminated. Ms. Shumaker's tenancy cannot be lawfully terminated due to the incident leading up to her termination being an act of domestic violence committed against her.

**Answer:    The allegations in this paragraph allege legal conclusions and therefore do not require an answer from these Defendants.**

37. Defendants have not provided Ms. Shumaker with continued housing assistance.

**Answer:    Defendants admit that they have not provided Plaintiff with continued housing and further deny any duty to do so.**

38. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to stiffer damages, including loss of entitlement to federal housing assistance, physical and emotional distress, loss of physical liberty, loss of privacy, and attorney fees.

**Answer:    Defendants deny the allegations in this paragraph.**

## COUNT I

39. Plaintiff realleges paragraphs 1-38 as if fully set forth herein.

**Answer:** **Defendants repeat and reallege their answers to paragraphs 1-38.**

40. Since Plaintiff had lived in the building owned and operated by Defendants, Defendants maintained a policy of both employing a security guard who required identification from any prospective non-tenant visitors and the security guard was required to obtain approval by the tenant prior to admitting any visitors.

**Answer:** **Defendants deny the allegations in this paragraph insofar as they did not employ any security guard. Defendants further deny that Related Management ever owned or operated the building at any times relevant hereto.**

41. The Defendants undertook these security measures and Plaintiff relied on these security measures to prevent unauthorized, unknown and unwanted visitors to her residence.

**Answer:** **Defendants lack sufficient knowledge to admit or deny Plaintiff's reliance on any security measures.**

42. On March 9, 2016, Defendants negligently failed to follow their practice and procedures and let Ronald Thomas into the building without authorization from the Plaintiff, permitting him to gain access to Plaintiff's apartment.

**Answer:** **Defendants deny the allegations in this paragraph.**

**43.** As a result of Defendants' negligence, the Plaintiff suffered and continues to suffer the above-enumerated damages.

**Answer:** **Defendants deny the allegations in this paragraph.**

WHEREFORE, Plaintiff SHUMAKER demands judgment against Defendants for compensatory damages in excess of $30,000 plus the costs of this action and such other relief as this Court deems equitable and just.

## COUNT II

44. Plaintiff SHUMAKER realleges paragraphs 1-43.

**Answer:** **Defendants repeat and reallege their answers to paragraphs 1-43.**

45. As a result of Defendants' actions, Plaintiff suffered physical abuse and other consequences.

**Answer:** **Defendants deny the allegations in this paragraph and demand strict proof thereof.**

46. The abuse Plaintiff suffered is the result of Defendants' failure to exercise reasonable care.

**Answer:** **Defendants deny the allegations in this paragraph and demand strict proof thereof.**

47. Defendants' failure to exercise reasonable care increased and resulted in the harm Plaintiff suffered as detailed above.

**Answer:** **Defendants deny the allegations in this paragraph and demand strict proof thereof.**

WHEREFORE, Plaintiff SHUMAKER demands judgment against Defendants for compensatory damages in excess of $30,000, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## COUNTS III - X

Simultaneous with the filing of this partial answer, Defendants have filed a Motion to Dismiss Counts III-X pursuant to Federal Rule of Civil Procedure 12(b)(6).

                Respectfully submitted,

By: /S/ Margaret C. Firnstein
     Attorneys for Defendants

Margaret C. Firnstein
SmithAmundsen LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200
mfirnstein@salawus.com

# VERIFICATION

I, Eleanor Hannagan, as representative for METROPLEX, INC., RELATED MANAGEMENT, and 2101 S. MICHIGAN LLC, on oath and pursuant to 735 ILCS 5/2-605, state that I have read the foregoing Answer to Plaintiff's Complaint and that the answers contained therein are based upon information and belief that are true in substance and in fact.

_____